All right, our next case, QT, on behalf of H.P. v. Pottsgrove School District. Good morning, Judge Jordan, Judge Greenaway, Judge McKee. Long time, Mr. Yatkin. Yes, Your Honor. My name is Alan Yatkin. I represent Appellant QT, the cousin of the child, E.E., the grandmother of the child, and F.P., the father of the child. And with the Court's permission, I would like to reserve three minutes. Sure. Thank you. Congress recognized that when it comes to families, one size does not fit all. Well, Kevin, before I know, I'm sure you spent a lot of time preparing this, but let me just take it to a question. Sure. Sometimes the law gets really frustrating to me. I know they don't teach common sense in law school. I don't think they teach common sense in law school. It's too much time we need to spend upon law against perpetuities and rule. In Shai's case, why not? You asked in your complaint, and I will ask your friends this question. You asked in your complaint, if QT is not the appropriate person to bring this action, substitute B.B. and F.P. And they're both on the complaint. Why not just do that? And it's over. At least the lawsuit's over. I don't understand why it got this far. And, again, I know this shouldn't be directed at you. It should be asked of Mr. Walton's colleague. But it's really annoying. I mean, I understand the school doesn't want to spend money on some of its kids. I get that. It's unfortunate, but it's reality. So the case gets driven by not wanting to spend money on a kid. Thank you. Let me ask this. Did the other side oppose your request in the complaint to substitute parties if it turned out that QP was not the appropriate party? Yes. They opposed that? Yes. What they said is file again. It's dismissed. Go back and grandmother or father can file again. The problem with that is that, as you know, the IDEA has a statute of limitations, a two-year statute of limitations. And in the case of identification, which is what we have here, identifying the child as someone in need of special education, it's a when the parent knew or should have known. So we don't have a factual record. We can't determine that here. But what you're suggesting to us is they're saying file again because the upshot of filing again is you're out of court on statute of limitations grounds. I don't know that. It's a possibility. We don't have that record. You're being very kind. What we know is that the cousin, QT, first raised it in 2018 and the due process complaint was filed in 2020. So the timing is certainly close. And it took three months before it was dismissed. So that's the possibility that the parent is out of court. And we don't have a record. In the due process hearing, the district would raise that and it would be litigated. None of that has happened. And why should the proper parent, QT, why should they have to go through that? If they're correct, if I'm correct in my argument, why should you have to dismiss and go back and potentially lose the claim or lose three months of comp ed because of the timing? Well, this stretches back how far? Remind us. The child was enrolled by the cousin, QT, for the 2014-2015 school year. So we're coming up on a decade to figure this out. Were there efforts at mediation? One of the things that's occurred to me is, like, why hasn't this thing settled? And maybe you can't answer that. And we're not going to make you answer that on the record. Maybe you don't know. But it's passing strange that almost 10 years into this, the only thing that the Pottstown School District seems to be able to say is wrong party. After it had said right party, it says wrong party. Is there a reason why this thing hasn't settled? So I normally wouldn't bring this up. But since you asked, this court has a wonderful mediation program. We were scheduled for mediation. The school district said it's not going to settle and there's no sense going to mediation. So here we are today. Okay. Well, let's get to the merits of this. There's some question about whether or not state law plays into this. What's your position? Does the state law bear on who the custodial parent is? My position is we don't reach that. There's no conflict. There's no disagreement. The statute is clear. Who the parents can be. The one thing the statute's not clear on is if there's a conflict, what happens. There's also a judicial decree here which complicates things. That seems to me what the only thing against you is the impact of the judicial decree and what that means insofar as we interpret the regulation. Yeah. So humor me. I know you say my answer is we don't get to that. But I'm asking you to get to that because they bring it up. The district court seems to think that state law plays a part. The Second Circuit and Taylor seems to think it plays a part. So if we thought it played a part, does it cut against you? No. Because in the Second Circuit case and all the cases cited by the school district, you were dealing with sole custody, where someone had been excluded from having custody. Here, the order from the court of common pleas was primary physical and legal custody, did not say sole, did not exclude others. So this is different from all those cases. And we have that primary custodian testifying at the hearing that the cousin called by the district as a witness. It wasn't called by QT. She was called by the district, as was the father. Okay. Well, let's get to the analytical route you want to take, where we don't even ever get to the state issue. So, as I said, the statute on its face deals with who a parent is. And there's no question that under the statute, QT, the cousin with whom the child lives, qualifies as a parent under the statute. So the district has... Assume that the grandmother here, who has the judicial decree, was in fact opposed to what QT was doing. Then we would go to the next step. Does that factual circumstance suddenly make the statute unclear? No. So how can the statute be perfectly clear, depending on whether or not the facts on the ground shift? The statute is clear as to who can be parent. Where the statute is not clear is what happens if there's a conflict. The regulation fills that gap. If there's a conflict, that triggers the regulation. But that's not what the regulation says. I want to go to the Department of Education and what they said about the regulation. And if you look at the district's brief, page 9 and 10, they cite the federal register and what the Department of Education said. And they take that from the district court's lengthy footnote at page 4 of the appendix. The problem is that they miscite it. They're saying that that's in the August 14, 2016 issuance of the regulations. In fact, it was in the June 2005 register when the department put it out for comment. And at that point, the department said that the purpose is to identify the appropriate person to serve as a parent, especially in those difficult situations. So that especially suggests that there are other situations besides the most difficult. But in 2005. There's no tension between the statute and the regulation, you're saying. Am I hearing you right? Yes, there's no tension. Yeah. Tell me if I'm understanding your argument right. I thought your argument was B1 and B2 don't apply, particularly when you're guided by the commentary from 2006. Guided by the commentary from 2006, we have an instance where there's no apparent conflict because EE isn't trying to cede influence over the child, right? There's no conflict between QT and EE. So if there's no conflict between QT and EE, B1 and B2 don't come into play. So the fact that the district court relied on a judicial decree is actually of no consequence because it never comes into play. And all you do is you rely on A4, which gives QT the ability to make the decisions on behalf of the child because the child lives with QT and QT under A4 is a parent. I wish I had said it so articulately, Judge Greenway. You're exactly correct. It doesn't come into play. And the reason we know it doesn't come into play is because the DOE says so. It says so three times. In my brief, I only, you know, quote the one time that they say it. But they actually use that same language about determining when there's a more than one individual seeking to serve as the decision maker, as the parent for the child. They say it three times in those two pages of the regulations. They're clear. And they take out that especially language from the original putting the regulations out for comment. The DOE is clear. There's nowhere the court has to go. It's only if there's a conflict. If you would, you are entitled to attorney's fees under the statute? Yes. And the panel of this court has, and I'm drawing a blank on the underlying case, but it was cited in my case, which was MR versus Ridley, that the appellants would be a prevailing party because they're put back into court. And that is a relief that entitles you to counsel. And what relief does the young lady get at this point? What does HP get if you win? HP would be entitled to compensatory education. Well, she'd be entitled to a due process hearing. And if she prevails at that due process hearing, there would be compensatory education to make up for what she was denied while she was a student in the Potts Grove School District. How old is she now? She is 17 years, nine months. She turns 18 in June of this year. So we're basically talking like sixth grade. I mean, I know 10 years, but the key part of this is like fifth grade to 11th grade? I don't know if I can say that because it may be sooner. As I said when I was talking about statute of limitations, I don't know when the new or should have known kicked in, you know, whether it was 2014, 2017, 2018. I don't know. All right. Thank you very much. Good morning, Your Honors. May it please the Court, my name is Mark Sheremy Walz, and I'm representing the Potts Grove School District. Mr. Walz, other than your client's desire not to spend money on HBB, why are we here? Why would you oppose in the district court? Why in the world, I assume you still represent the school district, why in the world would you oppose in conscience letting the district court consider the matter as though BB or FP had brought the matter as opposed to QT when they're all on the complaint? How do you understand that? It is not the situation at all that the district does not want to spend money on disabled students. Well, okay. Forget, okay. I understand it's not the school district's concern about the purge. Answer the last part of the question.  That's what's been explained to me, is that the reason that this hasn't been refiled is because then plaintiff's counsel wouldn't be able to recover all of their fees for that first administrative hearing, which was a five-hour Zoom hearing. There's no underlying motive here to avoid responsibility by invoking a statute of limitations. Absolutely. Well, obviously the statute of limitations has now gotten close to running. And you're certainly not saying to us that you'd forego that affirmative defense. Well, maybe you are saying that. Maybe you're waiving it. I can't do that on behalf of my client. I didn't think so. So why don't we just dive right in. You explained to us what is unclear about this language from 20 U.S.C. section 1401. The term parent means an individual acting in the place of a natural or adoptive parent, including a grandparent, a step-parent, or other relative with whom the child lives, or an individual who is legally responsible for the child's welfare. What is ambiguous about that, Mr. Walls? Your Honor, the Department of Education has issued regulations that clarify. We're not talking about the regulations right now. I'm just asking a really straightforward question, I think. Is there anything ambiguous about that language? About the language? No. But the circumstances are. And child custody is a nebulous thing that is frequently changing. Well, there's nothing that hasn't changed here. It has changed here, Your Honor. Since 2014? 100% has changed here. Who filed the request? The scenario is that the child's residence and who she is residing with has changed. This started in February of 2020, right on the eve of the pandemic. How is that in the record? Or where is that in the record? Because as I read the hearing officer's factual determination, which is the last factual finding on this point. Yes. That I'm aware of. The child lived with QT because the investigation, according to the hearing officer, was never completed. So that factual finding that the child lived with QT. Now, I'm sure you'll inform me if there's something additional. That was the last finding at the time. Nonetheless, the testimony in the record, the testimony of the counselor. The testimony was disregarded, right, because the hearing officer didn't say I'm taking into account everything and therefore I come to the conclusion that the child lives somewhere else than QT's. The hearing officer said the investigation hasn't been completed. That's on the school district. What I'm left with is that the child lives with QT. There's two different aspects here. The hearing officer also found the school district's witness not to be credible. The investigating officer. The investigating officer. As far as the counselor goes, the counselor is the one who testified that the student herself said, I am in the process of moving with my dad. I'm sorry. I'm going to interrupt you, and I beg your pardon. Yes, sir. Please answer my question. I'm sorry. I got interrupted. I understand because I want to know, is there another factual finding that I'm not aware of with regard to where the child lived? I thought the factual finding by the hearing officer was that the child lived with QT. Am I incorrect? That is correct at the time, Your Honor. Okay. Thank you. The admission. At the time. I know you want to. I'm sorry, Joe. You answered the question by not answering the question. I mean, you put that little at the time on this record, the child lives with QT. The only factual inquiry into the matter has concluded that the child lives with QT. That was part of the school district's. One of the two reasons the school district objected to the complaint, and that was discounted by the district court. Your Honor, the reason I'm making a distinction of time is because standing applies throughout the duration of your lawsuit. You don't get. The standing does not only apply at the beginning of the lawsuit. We objected at the beginning of the lawsuit, but it applies throughout. And so Your Honor is asking, in other questions, how old the student is, where she is, what's the scope of the suit. The student said, I'm in the process of moving in with my dad in the neighboring school district in Pottstown. Have you made, have you, I just may be clueless here. Are you saying they should be thrown out on standing? A hundred percent, Your Honor. And you're saying that because it's all different now, even though the last finding of fact before us is that she lives with QT. The last finding of fact before us is she lives with QT. Correct, Your Honor. Okay. However. And how would we do that? Okay. We would just hear you say this. No, Your Honor. No, Your Honor. It's not at all. The standing goes to, do you have standing as a parent under the IDEA? And that's the original grounds under which the hearing officer dismissed the case. Under Section B-2 of the regulations. Okay. Now, just stop for a second, Mr. Walz, because now we have moved from what started to sound like an argument, not about the merits of who can talk about this, but an assertion that there's not standing in a constitutional sense because this person has left and that somehow we should be taking it into account. Maybe I misunderstood what you were saying a minute ago, but when you said standing counts through the whole case, I thought what you were getting at was an invocation of a constitutional point. Now it sounds like what you're saying is statutory standing. So I know standing is the same word in both those places, but they really mean bigly, bigly, bigly different things. So you stick with me, please, and tell me, are you making a constitutional standing argument that you think you're entitled to raise now, here in this court, or are you making a statutory standing argument? Your Honor, I'm not making a constitutional standing argument. Okay. Then what do we care about where she lives now? What do we care if the last factual finding in the record before us is she lives with her cousin? What does it matter? There's two different aspects. One is that the prospective part of the case was completely mooted as of the conclusion of the 1920 school year. So the only thing that remains is... I actually cannot believe I'm hearing this. You're asking us to go beyond the record, ignore the finding of the hearing officer who found the school district's witness not credible. Ignore all that stuff and say, well, look, take it from me, Mark Walls, the kid moved. Your Honor, I'm not at all saying that, and I'm sorry that I'm giving you that impression. Okay.  Yes, Your Honor. What would be the basis for us to consider any factual offer, whether it be offer of proof or offer to the court, besides what we've reviewed from the hearing officer? Because as we see it, the reason the looks of incredulity on my part, I won't speak on the part of my colleagues. Please speak for me, too. I'm totally incredulous. May I? Totally incredible, please. I defer to my... The reason we're looking at you as we are is we're shocked to find that we can look at a fact other than the facts presented from the hearing officer. And you alluded for a moment, just so that the record is clear, you alluded for a moment ago to our questions about, you know, how old is she and what grade is she in. Those are matters of just interest. Those are matters that can't be taken into account in any way in our decision-making. So if you're proffering what you have just for our edification, then say so. But if you want us to take these factual offers into account, tell us how that happens, because we are unaware of how we can enhance the record. Your Honor, what you stated as the latter is 100% my position. I was trying to complete Your Honor's understanding of the situation, but I'm not attempting to introduce any new facts other than the record before us. Then with limited time left, we're going to accept the record that's before us, which is she lives with QT. That's the record that's in front of us. That being the case, explain what tension there is. Even if we accept it, even if we said, you know what, it's puzzling to us what Section 1401.23 means. We just don't understand what those words mean. We better go to the regulations. And we went to the regulations. What tension would there be between the statute and the regulation that would make us say, yeah, QT, not apparent? What tension between the statute and the regulations? The fact that the regulations say that if there's a court order in place, then the person who has custody in the court order is our decision maker. No, it doesn't say that. It does not say that. That is not what the regulation says. It does not say is the decision maker. It says shall be determined to be the decision maker. If a judicial decree or order identifies a specific person or persons to act as the parent of the child to make educational decisions, then such person or person shall be determined to be the parent for purposes of this section. In other words, if there's something going on and it's difficult to know, like, who can act as the parent, then that person can be determined to be the parent. It doesn't say shall be the decision maker. Doesn't it actually say quite the contrary that if you've got a conflict, if you've got a conflict, then the person with custodial power is the person who gets to be the parent under the statute? Your Honor, I respectfully disagree. None of the cases that have ever analyzed subsection B2 of the regulation have ever imposed a conflict requirement on that. Would you agree then that if, at least for the sake of argument based on your position as just stated, that one might look to the commentary to give some guidance as to this point? You'd agree with that? I'd agree, Your Honor. Fabulous. So let's take a look at the commentary. This is from Federal Register Volume 71. It's 2006, and I'm quoting, Section 300.30B was added to assist schools and public agencies in determining the appropriate person to serve as the parent under Part B of the Act in those difficult situations in which more than one individual is, quote, As I under the record, and maybe you have a better understanding of it than me, there's no difficult situation here where there are competing interests by persons attempting to stand in the stead of a parent. Is that correct? That's correct. Okay. If that's correct, then looking at the statute, looking at the regulations guided by the commentary, wouldn't the conclusion be that B1 and B2 just don't apply here? And we go to A4 as the logical way of thinking about this, because QT, as found by the hearing officer, is the person that the child is living with and hence is responsible for educational decisions since there is no one else in competition or no one else hoping to make those educational decisions? No, Your Honor. The commentary goes on to state that B2 provides that if a person is specified in a judicial order or decree to act as a parent for purposes of this law, that person is the parent. Doesn't for purposes of this law then bring back a situation where there is contested control and custody? In all the cases that you're relying upon, there have been not only contests, but some of them incredibly vitriolic contests. In the vast majority of the cases that we're citing, Your Honor, there are not conflicts between the two parents. In almost every case … It's a conflict between the person asserting the right to make a decision and the person who under the regulation has the right to make the decision, right? No, Your Honor. And that's what I'm saying. In each one of these … Give us the case where it's not a conflict. In Dreesen v. Lockman, the 11th Circuit case, the grandparents were the guardians. The same thing as Dreesen? Dreesen v. Lockman, the 11th Circuit, the grandparents were the guardians. The grandparents were not a party to the case. The school district moved to dismiss the case. The same with Smith v. … I'm sorry. We're talking past each other. I'm sorry. It's not who was a party to the case. It's that there was a conflict between decision makers who wanted to assert something. In every case that you've cited, is it not in fact the case that the reason resort is made to the regulation is because somebody is saying, I want this for the child, and somebody else is saying, I want something different for the child? Correct, Your Honor. Okay. In all of them. Now, you said a minute ago, no court has ever said that this is a conflict situation kind of a circumstance. So why don't you address Mr. Yatvin's citation of the 7th Circuit's case in Navin, a case in which the court seemed pretty directly to say, look, it's not clear to us if the parents here are in conflict. If they are, then the one with the custody under a decree has got it, and if they're not, then on remand it's a different matter. I want to make sure I was clear. The cases that I'm referring to, none of them have conflict. I am saying none of them have conflict between the purported parents. It is always the school district moving to dismiss, and the noncustodial parent is not challenging the educational decision. As far as Navin goes, that was decided under the old regulations before B-2 was added. And there was also in that case. So that's your basis. You're saying B-2 is the one that makes it all sensible. Yes. Okay. Well, why don't you just address all of B? Because they also make the argument that you understand B-2 by looking at B-1, and that tells you and shows you that B is to deal with intraparty, intraparent, intracustodial adult conflict. You can't read B-2 by itself. You've got to read B-1 too. And when you read B-1 and you read B-2 together, you understand this is dealing with conflict circumstances, period. Go ahead and answer that question. Yes, Your Honor. In none of the cases that have ever addressed this has anyone ever read that conflict into B-2. Well, maybe it's because nobody ever took the position that the Potts Grove School District is taking here. Your Honor, that's — And you cite us to a single case where every parent, every possible person interested in this child's welfare is on exactly the same page, and it's only the school district that says, you know what, the statute's unclear. Go to the regulation, throw them out of court. Your Honor, in three different matters that we've — I'm trying to explain, Your Honor. In W.S. v. Wilmington — Explain after you answer my question. Explain after you answer my question. Is there any case, any case at all, that fits these facts, where every adult with an interest in this child has got exactly the same position, and it's only the school district that says, you know, this is wrong. We've got the wrong party here. Throw them out. Your Honor, there's — I'm not aware of another case where there's another adult who does not have custody who is agreeing with the person with custody. There's many cases where the party — You mentioned W.S., and I hate to keep cutting you off, but it's hard to sit still through this. One of the last lines in the court's opinion in W.S. is, the parties fail to agree on virtually all aspects of the children's care. That was exactly the case I was referring to when I talked about a vitriolic relationship existing between parties competing for who had the right to control the kids' care. That was exactly the case I had in mind. That does not help you at all. In fact, Mr. Yatvin could have started his argument by saying, judges, take a look at W.S. and sit down. But in that case, the mom starts with custody. She wins a due process hearing. They're so far along that she's won the due process hearing, but she loses custody. She does not have custody, and the court dismisses the case because the father now has custody. It's not to say that they are litigating in court over the needs of the child. It's the school district has moved to dismiss. But the whole purpose of the statute is to define at a point in time who may act for the child in an educational context. The case that you just raised, that has to change because the status of the mom changed. Therefore, the dad has to step in. That is distinct from what we have here, which is the judge's point in asking you for some case law to show us when there is not a conflict. The case you just cited, there's a conflict. There's a change in circumstances that creates a conflict. Here, there is no change. QT, excuse me, the child lives with QT based on the record that we have before us because we are unable to be edified, as you have suggested, with other facts. That's the fact that we have to deal with. The cases that you raise are distinct. Can I raise two cases, Your Honor? I mentioned Dreesen v. Lockton, the 11th Circuit case. The grandparents, there's no record that the grandparents are disagreeing with the person who is purporting to act as the parent in that case. There's also the 6th Circuit decision in 2020, Chukwuani v. Salon City School District. That's an unpublished decision that was not cited in our brief. In that case. Unpublished and not particularly helpful. Yes. Let's focus on the 11th Circuit case that you just cited. Yes. You said there's no cited disagreement between the grandparents on the one hand and the parent who was taking over custody. The mom was filing the due process case. Grandparents had the legal custody. And the court went to B2 to determine what? The court went to B2. It was a motion to dismiss under 12B1 and B6. And the court dismissed it and the 11th Circuit affirmed. Right. But what was the purpose of going to B2 if they were both on the same side? What was there to determine? Because there was a court order in place that defined who was the decision maker under the IDEA. And that's our entire case. Your opponent here, Mr. Yadfin, says, look, that was a particular circumstance where the court had to accept that this wasn't apparent because parental rights had been terminated. Dreesen was a case where there may not be a record of conflict in the sense of grandparents being on a different page than the mother, but the mother's rights were terminated as a matter of law and so could not serve as apparent under any regulation or any statute, just as a matter of state law, not apparent. So how does Dreesen help you? Because the legal analysis is the same in every single one of these cases, which is if there is a judicial order or decree, you look to that person and that person is your parent under the IDEA. The same with Smith v. Meeks. The same with Fuentes in New York in the Second Circuit. All of them say, who is our parent under state law? Your assertion is that those aren't circumstances where, and maybe we should have been more precise. We said there's conflict. Maybe we should have said there's conflict or parental rights were terminated. So I'll repeat. Can you point us to any case that supports your assertion that people go to the regulation to figure out who the parent is unless there's some dispute about who can assert the parental rights? And, Your Honor, nearly every single one of these cases is a dispute because it's the school district disputing whether this person has the authority. And I just, to wrap this up, I realize my time has expired, but the proposal that they say that conflict is required is a completely unworkable standard when we're dealing with foster parents may have custody. Are they supposed to get an attorney to litigate? The purpose of the commentary, if you were right. The commentary relates to B1, not to B2. That first part of the commentary is describing how B1 was enacted, which is a rebuttable presumption in favor of the natural parents or guardians. It's just for B1. For B1. For B2, the commentary is straightforward, that if a judicial decree or order declares that someone has the educational decision-making rights, in this case legal custody, they are the decision-maker. Keep explaining why it would be unworkable. Just live with the statute. The statute, which I think you've conceded, is perfectly unambiguous. Maybe I'm wrong about that. I thought you said the statute was unambiguous, but you've got to go to the regulation when circumstances require it. Did I misunderstand what you said earlier? Your Honor, the statute is not ambiguous in terms of the grounds of who can be a potential parent. Right. And a moment ago you started to say it's unworkable because of foster parents. But, of course, the statute says natural or adoptive parent, including grandparent, step-parent, or other relative with whom the child lives, or an individual who is illegally responsible for the child's welfare. So go ahead and tell us what makes this unworkable. It is ambiguous in the way that Judge Sotomayor described in Taylor, which is it can only be read with reference to state law. And that was under the old regulations, but we have to consider state law. So, Your Honor, consider a scenario where a child in Philadelphia has been removed to foster care in Montgomery County. Our school district is in Montgomery County, so this is an apt analogy. The biological parent whose rights have been terminated by the Court of Common Pleas nonetheless seeks to file a due process complaint against the school district in Montgomery County. But sole legal decision-making right rests with those foster parents. The question is, when that due process complaint is filed from the Office for Dispute Resolution, who notifies the foster parents that have been filed? There's no notification procedure in the regulations. What constitutes a conflict? With a 92-page IEP, if they disagree on one accommodation, is that a conflict? So you're citing us a circumstance where the person who brings the application for a due process hearing is manifestly not entitled to because their parental rights have been terminated. Temporarily. Temporarily. It's a temporary cessation of their parental rights under the foster care law. Right. Okay. I just want to make sure I understand it. That's your best argument for why it's unworkable to look at this statute and treat it on its face. My best argument, Your Honor, is that the idea of conflict is undefined in all respects. There is no conflict resolution mechanism required in B-2. It's not required that there be conflict. And if it were so, are those foster parents supposed to get counsel to go into this due process hearing, to litigate this, to try to figure out what? Ironically, here the other party had counsel, same counsel as QT had. And I'm just sitting here trying to get past the fact that you would object to the district court taking the complaints being filed by the very people that you're now crying crocodiles to us. Crocodiles here is to us arguing that these are the people who have the authority to bring this complaint. You're on the complaint, but you say to the district court, no, no, no, no, no. Make them amend. I don't know how they'd amend the complaint. I guess they would just take QT's name off of it and refile the same document. Your Honor, all they had to do was send an e-mail that resubmitted a due process complaint. And this is why the district court — Why do we do that? Meantime, the clock is ticking, not only on the statute of limitations, which may be playing a bigger role here than you're willing to admit. But this poor kid is going all this time without — assuming that there is a need here All this time without the school district, whose care she purportedly is entrusted to, really giving a darn about anything other than getting her out of the district or getting her out of the school. But that's what Judge Jones said. I'm so perplexed why they didn't just refile the complaint. When we filed our motion — The other perplex is why Judge Jones, who was a very good judge, would require them to do that. It would be one thing if B.B. and F.P. were not on the complaint. The complaint that was filed was filed not just by QT. It was filed by B.B. and F.P. And they specifically asked for this kind of a remedy. They were not at the administrative level, Your Honor. So the administrative complaint was only filed by QT. Understandable, because up until that point, the school district had been dealing with QT. They'd looked to QT for approval of the prior action plans. QT was the one who had initiated the request to have some kind of a psychiatrist come in and look at the child to see whether or not the child was — her needs were not being met. Why would the school district all of a sudden say, well, wait a minute. I know we've been dealing with QT, and QT's been the one who's given us all these permissions over the years, but I think we need to deal with B.B. now, or F.P. All they needed to do, Your Honor, was to either amend their complaint at the time that we first raised the issue, or two, was to refile the complaint. All right. We've been around the block. Thank you, Mr. Walls. Thank you, Rex. Mr. Abbott. Kindly address the assertion by Mr. Walls that this is a straightforward matter of regulatory interpretation and that no court has ever done what you're asking us to do. This would just be launching into the void. I've been in the void since the past FR, I think. Being respectful of Judge Greenaway's observation that unpublished decisions are not particularly helpful, I would answer, Judge Jordan, your earlier question and this question with Brock. The Southern District of New York had the case where the mother and the grandmother, both of whom qualified for parents under 23 of the statute, and the district court ruled they both had standing because they weren't disagreeing. They were on board together. The child lived with the grandmother, but the mother was the biological parent. So there's respectfully an example. Is NAVIN worth looking at? Mr. Walls says that's pre-B-2. Can't look at it, doesn't help. I think it is worth looking at because it tells us how to interpret the statute itself. For the regulation, if you conclude that there is a gap in the statute, then you look to the regulation. And Judge Greenaway read a portion from the Federal Register of the comment, but respectfully there's two other sections that say the exact same thing on page 46566 of the Federal Register, which is the page before Judge Greenaway read. Does it speak to B-2? Because unless I misunderstood your colleague's argument, he said the commentary is speaking to B-1. It's not talking about B-2. So you're just being mis- I mean, he didn't say this, but politely I think he was saying it's misdirection to cite to that commentary as if it applied to B-2. Well, the comment is, and I have copies if that would be convenient for the court to have it in front of you as I read, but the comment was one commenter stated that 30A-2, that's of the regulation, withdraws the rights of biological parents. The district court said we don't agree if there's not a conflict. On the section that Judge Greenaway quoted, that comment is preceded by, or that discussion is preceded by one commenter questioned whether 30B helps identify the parents or confuses the situation. So the response was to 30B. And later on the same page, which is 46567, another commenter stated that 30B-2 appears to be aimed at situations where the court has designated such a parent. And the discussion says 300.30B-2 specifically. And then it says, was intended to add clarity about who would be designated a parent when there are competing individuals under 30A-1 through 4. So I think that the Department of Education has spoken exactly, and that Mr. Walts respectfully is mistaken in his analysis. Look, to hark back to something Judge McHugh said, my time is up, if I can finish my thought. To hark back to something Judge McHugh said about common sense, Will Rogers said common sense ain't so common. In this case, and I think Mark Twain and Voltaire, they all get credit for it, but in this case the common sense evaluation is where the district knew about that custody order in 2015 and raised it. And parents followed Pennsylvania law and filed, QT followed Pennsylvania law and filed the paperwork saying, this child is living with me and I'm taking responsibility. And the district accepted that. And for the following years they dealt with QT. And QT was the one who was doing the homework with the child, taking care of that child, going to the meetings. When the district issued a PTR or a PTE, a permission to evaluate under the IDEA, they issued it to QT. When they had a meeting about the evaluation that occurred, they dealt with QT. When QT under the IDEA asked for an individual independent educational evaluation, i.e., under the IDEA, the district agreed with QT's request and they gave her that evaluation. And then they reconvened the evaluation meeting with QT and they still concluded that she was not entitled. But, hey, go to 504. And they had a 504 meeting and QT said, these are the, you're proposing accommodations that you've been giving informally and they're not working and so I have to go to due process. Under the IDEA, everything that the district did was dealing with QT as the parent, which, in fact, in every way she was, as Grandmother E.E. says. And it makes no sense to have divested her of decision-making authority. You're excommunicating her from the process and she's the one most familiar with this child. Who are you advantaging with the district's position of getting her out of the process where the statute allows it? All right. Thank you very much, Your Honor. Thanks. We thank counsel for their argument today. We've got the matter under advice.